

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

May 2, 2016

Mr. Richard A. Hyde, P.E.
Executive Director
Texas Commission on Environmental Quality
Post Office Box 13087
Austin, Texas 78711

Opinion No. KP-0078

Re: Administration of funds received through the federal Resources and Ecosystems Sustainability, Tourist Opportunities, and Revived Economies of the Gulf Coast States Act (RQ-0064-KP)

Dear Mr. Hyde:

On behalf of Commissioner Toby Baker, the Governor's appointee to the Gulf Coast Ecosystem Restoration Council (hereinafter the "Council"), you ask two questions regarding the proper way to administer the expenditure of federal funds allocated to Texas through the federal Resources and Ecosystems Sustainability, Tourist Opportunities, and Revived Economies of the Gulf Coast States Act of 2012.[1] *See* Pub. L. No. 112-141, §§ 1601–1608, 126 Stat. 405 (2012) (codified as an amendment to 33 U.S.C. § 1321) (the "RESTORE Act").

The RESTORE Act was created to establish the Gulf Coast Restoration Trust Fund (the "Trust Fund") in the Federal Treasury for the deposit of eighty percent of the administrative and civil penalties paid by the parties that were responsible for the explosion of the Deepwater Horizon oil rig in the Gulf of Mexico in 2010. RESTORE Act § 1602(a)–(b); 33 U.S.C. § 1321(a)(32), (35). The money deposited in the Trust Fund is allocated to the Gulf Coast States[2] through five different components. A basic understanding of the funding components is helpful in addressing your question, and we therefore begin with a description of each.

Under the first component, sometimes referred to as the Direct Component, thirty-five percent of amounts in the Trust Fund shall be available to the Gulf Coast States in equal shares for the expenditure for ecological and economic restoration. *See* 33 U.S.C. § 1321(t)(1)(A); *see also* 31 C.F.R. § 34.103(a)(1). With regard to these funds, the RESTORE Act lists eligible activities

---

[1]*See* Email from Richard A. Hyde, P.E., Exec. Dir., Tex. Comm'n on Envtl. Quality, to Op. Comm. (Nov. 3, 2015) and attached Letter from Toby Baker, Comm'r, Tex. Comm'n on Envtl. Quality, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Oct. 28, 2015) ("Request Letter"); Email from Richard A. Hyde, to Op. Comm. (Dec. 22, 2015) ("Supp. Request Letter") and attached Brief from Toby Baker (Dec. 22, 2015) ("Baker Brief"), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs.

[2]"Gulf Coast State" is defined to mean "any of the States of Alabama, Florida, Louisiana, Mississippi, and Texas." 33 U.S.C. § 1321(a)(34).

on which the States may spend their allocation, and the States must submit "a multiyear implementation plan for the use of such amounts" before receiving them. 33 U.S.C. § 1321(t)(1)(B), (t)(1)(E)(iv). The Gulf Coast States themselves "award[] contracts to carry out a project or program under this paragraph." *Id.* § 1321(t)(1)(K). As a condition of receiving these funds, a State must "certify that the project or program and the awarding of a contract for the expenditure of amounts received . . . are consistent with the standard procurement rules and regulations governing a comparable project or program in that State, including all applicable competitive bidding and audit requirements." *Id.* § 1321(t)(1)(E)(iii).

Under the second component, sometimes referred to as the Comprehensive Plan Component, thirty percent of the Trust Fund shall be disbursed to the Council, "an independent entity in the Federal Government," to undertake projects and programs that would restore and protect the natural resources, ecosystems, fisheries, marine and wildlife habitats, beaches, coastal wetlands, and economy of the Gulf Coast through a comprehensive plan. *See id.* § 1321(t)(2)(A), (t)(2)(C)(i). "Primary authority and responsibility for each project and program included in the Comprehensive Plan shall be assigned by the Council to a Gulf Coast State represented on the Council or a Federal agency." *Id.* § 1321(t)(2)(E)(ii)(I). "Amounts necessary to carry out each project or program included in the Comprehensive Plan shall be transferred by the Secretary of the Treasury from the Trust Fund to that Federal agency or Gulf Coast State as the project or program is implemented." *Id.* § 1321(t)(2)(E)(ii)(II).

The third component, sometimes referred to as the Spill Impact Component, disburses thirty percent to the Gulf Coast States pursuant to a formula established by the Council that is based on the impact of the oil spill on each State. *See id.* § 1321(t)(3)(A). To receive funds, a State must submit a plan, which in Texas shall be developed by the Governor or his appointee, for the expenditure of funds in this component. *Id.* § 1321(t)(3)(B)(i), (t)(3)(B)(iii)(V). Funds under this component are distributed by the Council to the Gulf Coast States "for projects, programs, and activities that will improve the ecosystems or economy of the Gulf Coast region." *Id.* § 1321 (t)(3)(B)(i).

The fourth component, sometimes referred to as the National Oceanic and Atmospheric Administration ("NOAA") Science Program, allocates 2.5 percent to carry out the Gulf Coast Ecosystem Restoration Science, Observation, Monitoring, and Technology program to support the fishing industry in the Gulf of Mexico. RESTORE Act § 1604(b)(1), (h). With regard to the funding of this component, the RESTORE Act simply provides that "[f]or each fiscal year, amounts made available to carry out this subsection may be transferred to the" Gulf States Marine Fisheries Commission. *Id.* § 1604(b)(3).

Finally, the fifth component, sometimes referred to as the Centers of Excellence Research Grants Program, allocates 2.5 percent to the Gulf Coast States in equal shares for grants to establish centers of excellence to conduct research. *See id.* § 1605(a). The States "shall use the amounts made available to carry out this section to award competitive grants to nongovernmental entities and consortia in the Gulf Coast region." *Id.* § 1605(c)(1).

The RESTORE Act provides that with regard to the State of Texas, the duties required under the Act shall be carried out by "the Office of the Governor or an appointee of the Office of

the Governor." 33 U.S.C. § 1321(t)(1)(F)(iv); *see* RESTORE Act § 1605(b). It also provides that "[a]mounts in the Trust Fund . . . shall . . . be available for expenditure, without further appropriation, solely for the purpose and eligible activities" outlined in the RESTORE Act. RESTORE Act § 1602(c)(1). If the Secretary of the Treasury determines that a State has failed to comply with the requirements of the RESTORE Act, the Secretary is required to withhold funds otherwise available to the State until all conditions of the RESTORE Act are met. 33 U.S.C. § 1321(t)(1)(H).

During the Eighty-fourth Legislative Session, the Texas Legislature included in the General Appropriations Act a rider addressing funds relating to the RESTORE Act. Article IX, section 6.24 of the Act requires that funds related to the RESTORE Act "shall be deposited to the State Treasury in a designated account to be determined by the Comptroller of Public Accounts." General Appropriations Act, 84th Leg., R.S., ch. 1281, § 1, art. IX, sec. 6.24, 2015 Tex. Gen. Laws 4343, 5198. Related to this rider in the General Appropriations Act, you first ask whether this section violates the provisions of the RESTORE Act assigning Texas's duties under the Act to "the Office of the Governor or an appointee of the Office of the Governor" and requiring that the trust funds "shall . . . be available for expenditure, without further appropriation." 33 U.S.C. § 1321(t)(1)(F)(iv); RESTORE Act § 1602(c)(1); *see* Supp. Request Letter at 1.

Relevant to your question, article VIII, section 6 of the Texas Constitution provides that "[n]o money shall be drawn from the Treasury but in pursuance of specific appropriations made by law." TEX. CONST. art. VIII, § 6. Thus, by requiring that RESTORE Act funds be deposited into the State Treasury, the General Appropriations Act subjects those funds to the state appropriations process. Answering your first question therefore requires construction of the phrase "without further appropriation" as used in the RESTORE Act and a determination as to whether the meaning of the phrase is limited to Congress's appropriation of federal funds or whether it also includes subsequent state legislative appropriations of those same funds.

The relevant portion of the statute reads: "Amounts in the Trust Fund . . . shall . . . be available for expenditure, without further appropriation, solely for the purpose and eligible activities of this subtitle . . . ." RESTORE Act § 1602(c)(1). This phrase has two possible competing constructions. One possible construction of this statute is that it speaks to disbursement from the Trust Fund, allowing the Secretary of the Treasury to distribute amounts from the Trust Fund without first requiring further action or appropriation by Congress.[3] *See id.* § 1602(e) ("the Secretary of the Treasury . . . shall establish such procedures as the Secretary determines to be necessary to deposit amounts in, and expend amounts from, the Trust Fund"). While numerous provisions throughout the Act further limit how funds are spent at the state level, subsection 1602(c) could be read to address only disbursement by the Secretary from the Trust Fund and not where those funds are then deposited by the State recipients. *See Food & Drug Admin. v. Brown*

---

[3]*See* Brief from Phillip Ashley, Assoc. Deputy Comptroller for Fiscal Matters, Office of the Comptroller of Pub. Accounts, to Virginia K. Hoelscher, Chair, Op. Comm. at 2–3 (Nov. 20, 2015) (on file with the Op. Comm.) ("Comptroller Brief").

*& Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (explaining that a statute must be construed in context with a view to its "place in the overall statutory scheme"). The Department of Treasury has stated that recipients of RESTORE Act funds "will need to comply with [Office of Management and Budget ("OMB")] guidance" in "2 C.F.R. Part 200."[4] Those OMB regulations require that "[e]ach state must expend and account for the Federal award in accordance with state laws and procedures for expending and accounting for the state's own funds." 2 C.F.R. § 200.302(a). Subsection 404.094(a) of the Government Code provides that "grants, donations, and other funds collected or received by a state agency under law shall be deposited in the treasury, credited to a special fund or funds, and subject to appropriation only for the purposes for which they are otherwise authorized to be expended or disbursed." TEX. GOV'T CODE § 404.094(a). Thus, a court considering these provisions could conclude that a requirement that funds be deposited in the State Treasury does not conflict with the provisions in the RESTORE Act assigning duties under the Act to the Governor or his appointee and requiring that the trust funds "shall . . . be available for expenditure, without further appropriation." General Appropriations Act, 84th Leg., R.S., ch. 1281, § 1, art. IX, sec. 6.24, 2015 Tex. Gen. Laws 4343, 5198; RESTORE Act § 1602(c)(1).

Another possible construction of the phrase "without further appropriation" is that it addresses appropriations both at the federal and state levels.[5] The RESTORE Act does not define appropriation. A common understanding of the term "appropriation" is a "legislative body's act of setting aside a sum of money for a public purpose." BLACK'S LAW DICTIONARY 117–18 (9th ed. 2009). The phrase "without further appropriation" is used in multiple contexts in federal statutes and is sometimes more limited in scope to "without further appropriation *by Congress*." *See, e.g.*, 22 U.S.C. §§ 2282(b) (concerning assistance grants by the Agency for International Development), 2286(c)(2) (concerning a grant program for Sub-Saharan Africa) (emphasis added). The RESTORE Act provision is not so expressly limited, however, and a court could decline to read those words into the text of the statute. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 631 (Tex. 2008) (explaining that we will not read words into a statute to change its meaning).

A typical attorney general opinion request seeks a prediction on how a court would rule based on a statute and a given set of facts. The complication with the question at hand is that it is less about how a court would rule and more about how the Department of Treasury would respond to the Legislature having drawn RESTORE Act funds into the appropriations process and to the State Treasury. *See* 33 U.S.C. § 1321(t)(1)(H) (authorizing the Secretary of the Treasury to withhold funds until a State complies with all requirements of the RESTORE Act). The best evidence for such an inquiry is not the rules for statutory construction handed down by the Texas Supreme Court but is instead how the Department of Treasury understands the federal statute to

---

[4]https://www.treasury.gov/services/restore-act/Pages/home.aspx.

[5]*See* Baker Brief at 1–2; Brief from Jimmy Blacklock, Gen. Counsel, & Adam W. Aston, Deputy Gen. Counsel, Office of the Governor, to Virginia K. Hoelscher, Chair, Op. Comm. at 5 (rec'd Nov. 23, 2015) (on file with the Op. Comm.) ("Governor Brief").

operate.[6]  While the latter inquiry often does not lend itself to resolution with an attorney general opinion, the unique facts of this case demonstrate what the Department of Treasury would likely conclude as to this particular state appropriation of RESTORE Act funds.

The Council, the federal entity responsible for a significant portion of the disbursement of the RESTORE Act funds, has already expressed a belief that the ability of a Texas entity other than the Governor or his appointee to control RESTORE Act funds would violate the Act.[7]  *See* RESTORE Act § 1603; 33 U.S.C. § 1321(t)(2).  The initial draft of the rider at issue required prior approval of any expenditure of $1 million or more of RESTORE Act funds by the Legislative Budget Board. *See* Tex. H.B. 1, 84th Leg., R.S., art. IX, § 6.24 (2015) (Introduced Version).  The executive director of the RESTORE Council indicated:

> The Federal Government has determined, and the Treasury Department has ruled, that the means by which these funds are made available to the States is through a federal grant process.  Thus, subjecting Trust Fund monies to the appropriations process of the Texas Legislature would appear to stand in contravention of the intent of [the] Act.[8]

Granted, the Legislature modified the rider to not expressly require legislative approval in that particular provision. *See* General Appropriations Act, 84th Leg., R.S., ch. 1281, § 1, art. IX, sec. 6.24, 2015 Tex. Gen. Laws 4343, 5198.  But the rider still draws RESTORE Act funds into the appropriations process, which is what led the Council to previously express disapproval of the structure.  And more specifically, even though the rider was amended to remove the previous approval role for the Legislative Budget Board, other language within the Appropriations Act bestows a similar role upon the Legislative Budget Board for an appropriation such as this.

In briefing submitted to this office, Commissioner Baker indicated that article IX, section 13.02 of the General Appropriations Act allows the Legislative Budget Board to disapprove and thereby block certain expenditures of RESTORE Act funds that have been federally authorized.[9] Section 13.02 provides:

> (a) Prior to the expenditure of any funds appropriated under § 13.01 of this Article IX in an amount in excess of $10 million greater than the amount for which an agency was appropriated federal

---

[6]This distinction necessarily encompasses the question of agency deference.  The extent of the divergence between how the Texas Supreme Court defers to state agencies and how federal courts defer to federal agencies is a an in-depth topic your current opinion request does not call on this office to illuminate.

[7]*See* Letter from Justin R. Ehrenwerth, Exec. Dir., RESTORE Council, to Honorable Greg Abbott, Governor of Tex. at 1 (May 15, 2015) ("Ehrenwerth Letter") (attached to Request Letter and on file with the Op. Comm.).

[8]*See id.*

[9]Brief from Toby Baker, Comm'r, Tex. Comm'n on Envtl. Quality, to Honorable Ken Paxton, Tex. Att'y Gen. at 1–2 (Mar. 11, 2016) ("Supp. Baker Brief") (on file with the Op. Comm.).

> funds for the same purpose in this Act, each agency shall report to the Legislative Budget Board, the Governor, and the Comptroller, the amount of federal funds and the proposed use of the funds.
>
> (b) If after the thirteenth business day after notification from the agency neither the Legislative Budget Board nor the Governor issues a written disapproval, the Comptroller of Public Accounts shall release the funds.

General Appropriations Act, 84th Leg., R.S., ch. 1281, § 1, art. IX, sec. 13.02, 2015 Tex. Gen. Laws 4343, 5223. Article IX, part 13 includes general provisions related to all funds received from the United States government by a state agency or institution. *Id.* § 13.01. Thus, the Legislative Budget Board would possess authority under this provision to disapprove the release of RESTORE Act funds.[10] Accordingly, the framework that the Council has given to interpret the RESTORE Act indicates its belief that "subjecting Trust Fund monies to the appropriations process of the Texas Legislature would appear to stand in contravention of the intent of [the] Act." Ehrenwerth Letter at 1. Because the General Appropriations Act mandates that RESTORE Act funds be further appropriated under state law, it is in direct conflict with the Council's interpretation that the funds "be available for expenditure, without further appropriation." RESTORE Act § 1602(c)(1).

Briefing submitted to this office suggests that depositing the funds into the State Treasury will better enable "limit[ing] the types of expenditures that can be made from the fund." Comptroller Brief at 5. However, Congress clearly indicated that the duties established under the RESTORE Act shall be carried out by the Governor or his appointee. *See, e.g.,* 33 U.S.C. § 1321(t)(1)(F)(iv). Utilizing a state appropriations process to limit that authority would be contrary to the terms of the federal law. Furthermore, to the extent that concern has been raised about oversight of the funds used, the Secretary of the Treasury is required to and has adopted numerous regulations to audit the expenditure of the funds and ensure that they are made in compliance with the RESTORE Act. RESTORE Act § 1602(e); 31 C.F.R. §§ 34.100–.805.

You also ask whether RESTORE Act funds may be "administered through a trust or other account created by the Texas Comptroller of Public Accounts outside the state treasury." Supp. Request Letter at 1. While section 404.094 of the Government Code generally requires "grants, donations, and other funds collected or received by a state agency under law [to] be deposited in the treasury," the Legislature created an exception to that rule for "funds held in trust or escrow for the benefit of a person or entity other than a state agency." Tex. Gov't Code §§ 404.093(b)(2), .094(a). Furthermore, the Comptroller may serve as "the trustee of funds or property outside the treasury" and may "contract with the treasury to manage the funds or property in a manner similar to the management of funds in the treasury." *Id.* § 404.073(a)–(b). Thus, the Legislature has

---

[10]No specific amount of RESTORE Act money was actually appropriated under the Appropriations Act, *see* General Appropriations Act. 84th Leg., R.S., ch. 1281, § 1, art. IX, sec. 6.24, 2015 Tex. Gen. Laws 4343, 5198–99, and Commissioner Baker relates that Texas stands to receive at least $528 million in RESTORE Act funds this year. Supp. Baker Brief at 2 n.3.

established a procedure by which certain funds may be administered through a trust outside of the State Treasury.  To the extent that the Office of the Governor or the Governor's appointee receives RESTORE Act funds in trust for the benefit of a person or entity other than a state agency, such funds may be deposited outside of the State Treasury in an account for which the Comptroller serves as trustee.

## S U M M A R Y

The federal RESTORE Act provides that its funds shall "be available for expenditure, without further appropriation." The federal Gulf Coast Ecosystem Restoration Council has previously determined that subjecting RESTORE Act funding to the Texas appropriations process would violate this law. The rider in the General Appropriations Act the Legislature passed ultimately draws RESTORE Act funds into the appropriations process and to the State Treasury and grants disapproval authority to an agency that is granted no such authority under the RESTORE Act. Therefore, the rider in the General Appropriations Act is in direct conflict with the federal interpretation of the federal RESTORE Act and is without effect.

Pursuant to section 404.093 of the Government Code, to the extent that the Office of the Governor or the Governor's appointee receives RESTORE Act funds in trust for the benefit of a person or entity other than a state agency, such funds may be deposited outside of the State Treasury in an account for which the Comptroller serves as trustee.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee